# WESTERN MARYLAND RAILWAY COMPANY ᴇᴛ ᴀʟ. *v.* EMPLOYERS' LIABILITY ASSURANCE CORPORATION.

## [No. 16, April Term, 1932.]

*Decided June 20th, 1932.*

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Paul S. Parsons* and *George Cochran Doub,* with whom were *Eugene S. Williams* and *William R. Semans* on the brief, for the appellants.

*James Morfit Mullen,* for the appellee.

SLOAN, J., delivered the opinion of the Court.

This appeal is from a decree overruling a demurrer to a bill of complaint on which an order had been passed restraining a settlement between two alleged tort-feasors (two of appellants) and an injured workman (a third appellant) to whom the plaintiff (appellee) had, as insurer, paid compensation.

The bill alleged that one of the appellants, Joseph W. Wright, in the course of his employment by R. C. Heller Company, Inc., was injured in June, 1929, and, as the insurer of the employer, the Employers' Liability Assurance Corporation, Limited, appellee, to December 5th, 1931, paid the said Joseph W. Wright as compensation and medical expenses, $1,915.98; that under the provisions of section 58 of article 101 of the Code, the Workmen's Compensation Law, the appellee and Joseph W. Wright, within two months of the date of accident, brought suit against the Western Maryland Railway Company, and later by amendment the Baltimore Fidelity Warehouse Company, both of which may be referred to as the railway company, as tort-feasors, to recover the compensation and expenses incurred as the insurer of

Wright's employer; that the railway company answered, denying liability, but that recently it had entered into an agreement of settlement with Wright, whereby it agreed to pay, and he agreed to accept, $1,500 and certain medical, surgical, and hospital expenses, to which the appellee had, without success, objected; that the appellee is advised that Wright's acceptance of the awards made to him "amounted to an assignment of his claim against the corporate defendants for his said injury"; and that the institution of the suit at law against the railway company amounted to notice of such assignment. The contention is made in the bill that the appellee is subrogated to the rights of the defendant Wright to the extent of such payments as it has already made, and such further sums as it may be obliged to pay as such insurer. It is further alleged that the appellee has refused to make any further payments on account of the award to Wright until its rights are determined, but that Wright has threatened to take steps to compel the appellee to continue payments under the award to him of compensation. The bill then charges that if the defendants are permitted to settle among themselves as proposed, "the effect of the same will be a legal fraud" on the appellee, which it is advised it has a right to prevent, and that it has a right to compel the corporate defendants to pay "its claim in the premises before making any payment to the defendant, Wright, as the corporate defendants have admitted their legal liability in the premises, at least to the extent of the cash sum of $1,500 and other sums which they have obligated themselves to pay"; and that the appellee has no adequate remedy at law.

The bill then prays: (1) A money decree against the corporate defendants for the full amount of the appellee's claim before making any payments to Wright; (2) that the appellee be subrogated to the claims of Wright to the extent of its claim; (3) that the corporate defendants be enjoined from paying any money to Wright until the appellee's rights are determined; (4) that Wright be enjoined from proceeding against the appellee; (5) that the prosecution by the defendants of the suit at law brought by the appellee and Wright

be enjoined pending this suit; and (6) general relief. On this, an order for the writ of injunction was passed forbidding the defendants from doing any of the acts prayed against in the third, fourth, and fifth prayers for relief.

It was stipulated in the agreement between defendants that the release therein contained should "not operate to release or discharge, or in any way affect any right or claim the Employer's Liability Insurance Corporation, Ltd., its successors and assigns, may have against said Baltimore Fidelity Warehouse Company and/or Western Maryland Railway Company * * * by virtue of any rights obtained by subrogation or under section 58 of article 101" of the Code, or any interest the insurance company may have in the suit at law now pending.

The appellee amended its bill by alleging that the corporate defendants had agreed to pay Wright the sum of $1,500, no matter what the outcome of this suit may be, and further alleged Wright's insolvency.

The defendants (appellants) demurred generally to the bill of complaint, and, after hearing the demurrer was overruled and this appeal taken.

The appellants' contentions are: (1) That an injured employee's claim for damages against a third person in excess of his compensation award may be compromised and settled independently of the insurer's claim under its right to subrogation, and (2) that the employee's claim for damages is separable from the insurer's under section 58, article 101, Workmen's Compensation Act. The appellee's contention is that it must be satisfied to the extent of the award paid before the employee is entitled to receive anything from the tortfeasor, either by way of suit or compromise.

The corporate appellants contend that, until the appellee (insurer) recovers a judgment against them, it cannot be known or determined whether it is entitled to reimbursement to any extent for the compensation paid the employee, in which event the amount agreed to be paid the latter would be nothing but a gratuity in which the appellee would have no interest. In other words, the appellee would have no rights

as against the third parties until they are judicially determined. In support of their theory that the compromise of the third parties with the employee does not settle or decide anything with reference to the insurer's rights against them, the appellants cite 12 *C. J.* 339 to the effect that "the compromise of a suit neither admits the validity of the claim nor ascertains any amount as being due and amounts to no more than saying so much is paid to be rid of the controversy." 3 *Wigmore on Evidence,* sec. 1061. This is also very true if it is a settlement of the claim, but in this case the purpose is to be rid of part of the claim and one of the claimants, and let the other shift for itself. They further, in support of the right to settle with the employee, rely on one expression in *State v. Francis,* 151 Md. 147, 151, 134 A. 26, 28, that the employee and insurer have "separate and independent interests" against a third party. The sentence from which that quotation was taken reads: "As thus extended [the right of the employees as well as employer and insurer to sue a third party] it was considered desirable that the right should be regulated with respect to its use by the parties, with separate and independent interests, to whom it was granted." The "separate and independent interests" there discussed were with respect to the interests of insurer or employer and employee in the judgment recovered by the employee's dependents, and the opinion concluded by saying that "in no event could there be more than one recovery under the statute for the same tort."

As the law stands now, the one paying compensation has the exclusive right within two months of an award, where the injury or death of the employee has been caused by a third party, to bring suit in his or its name, or in the name of the one injured or entitled to compensation, against the tort-feasor. If not done by the employer or insurer within that time, then the injured party, his representatives or dependents, may sue such third party; but even then the employer or insurer may sue, whether the employee, his representatives or dependents, sue or not. *State v. Francis,* 151 Md. 147, 134 A. 26; *Clough & Molloy v. Shilling,* 149 Md.

189, 131 A. 343. The effect of the statute is not to take from any of the parties their common-law rights, but declares "how the right should be regulated with respect to its use by the parties." Code, art. 101, sec. 58; *State v. Francis, supra.*

The right of subrogation in such cases has not been affected by the statute otherwise than to state how it shall be exercised by the employee and the one paying the compensation, and to define their respective interests in any money recovered from the third party responsible for the loss incurred. In the leading case in the state (*Packham v. German Fire Ins. Co.,* 91 Md. 515, 523, 46 A. 1066, 1067), it is said, quoting *May on Insurance,* sec. 454: "The insurer is treated as a surety who is entitled to all the remedies and securities of the assured, and to stand in his place, and use his name in an action to recover the money which he has paid. * * * And where the party insured insists upon his remedy against the party secondarily liable, he is conscientiously bound to make an assignment in equity to the person entitled to the benefit, and the acceptance of the indemnity from the insurer is in the nature of an equitable assignment, which authorizes the insurer to sue in the name of the insured for his own benefit, and this is a right which a court of equity will support by restraining and prohibiting the insured from defeating it by a release."

Section 58 of article 101 provides that, in a case wherein damages are sought from a tort-feasor by either the insurer or employee, his representatives or dependents, "if damages are recovered the injured employee or in case of death his dependents may first retain therefrom the expenses and costs of action for which the employer, insurance company, association or the State Accident Fund, as the case may be, shall be reimbursed for the compensation already paid or awarded and any amount or amounts paid for medical or surgical services, * * * and the balance in excess of these items shall inure to the injured employee." As the appellants construe this act, the alleged tort-feasor can settle with the employee, by entering into an agreement whereby the settlement is stated to be in excess of or in addition to any amount which the insurer might recover against them. In our opinion such a

settlement cannot be made without the acquiescence of the insurer. The effect of such a settlement would be to split a single cause of action into two cases, one of which it settles and pays, and the other it elects to try; ignoring the fact that there can only be one judgment, which must be divided according to the statute, and which must be preceded by the verdict of a jury (unless settled with all interested in the recovery) which takes no account of the settlement and release.

Suppose there had been no suit against the tort-feasors by either employee or insurer, could it be contended that the insurer, because the release of the employee said it was in addition to his compensation, would have no recourse against the money in the hands of either the tort-feasors or the employee?

It could hardly be disputed that under such circumstances the money could be impounded in the hands of the tort-feasor if it had not been paid, the charge of insolvency being made against the employee, or that, if it had been paid, recourse could be had against the employee to refund; the result depending on his responsibility. *Monmouth County Ins. Co. v. Hutchinson,* 21 N. J. Eq. 107. In *Illinois Automobile Ins. Exchange v. Braun,* 280 Pa. 550, 124 A. 691, 693, settlement for an accident had been made with Braun by the insurance company, its policy subrogating it to any rights which he might have against third parties. It would have had such rights even if not written in the policy. *Packham v. German Fire Ins. Co., supra.* Braun, without the knowledge of his insurer, settled with the Balto. & O. R. Co. for his damage. The insurer sued Braun for the return of the whole amount paid by it, which was greater than that received from the railroad company, and was successful; the court saying of the compromise: "Under conditions such as those contained in the policy before us, an insured cannot settle with the one causing him loss, except with the acquiescence of the insurance company without putting in peril his status with the latter." On the theory of the case just cited, if the alleged tort-feasors were not liable at all, and the employee took

money from them on his theory that he had been injured as a result of their negligence, and they had paid him to be rid of a lawsuit, the insurer would be entitled to at least the amount of the settlement, to be paid by the corporate appellants if seized in their hands (*Cary v. Phoenix Ins. Co.,* 83 Conn. 690, 78 A. 426; *Egan v. British & F. M. Ins. Co.,* 193 Ill. 295, 61 N. E. 1081; *Hartford Ins. Co. v. Pennell,* 2 Ill. App. 609); otherwise by recovery from the employee.

The authorities cited by the appellants in support of their contention, to the effect that "the insurer is entitled to no part of the funds which the insured received as compensation for losses not covered by insurance, where distinct allowances are given for each claim" (36 *A. L. R.* 1275), have no relation to a suit against a tort-feasor who is a third party, by either the insurer or employer. There is only one claim, and that is of the one injured, or his dependents in case of his death, and one judgment, the division of which is fixed by statute. However the money may be derived from such a source, and it makes no difference whether it be by suit or compromise, its distribution is fixed by the terms of the statute, and the construction put upon it in the opinion by Judge Offutt in *Barrett v. Indemnity Ins. Co.,* 152 Md. 253, 259, 136 A. 542, 544, and which we hold to be applicable here, is: "Considering this language and also the purpose of the original act as stated in the preamble thereto, the obvious intention of the Legislature was that the injured employee or his dependents should not receive any part of the damages recovered in a proceeding brought to enforce a legal liability in some person other than the employer, until the employer or the insurer had been reimbursed for all sums paid under the award against them or either of them, including payments for medical and surgical services and funeral expenses, and the 'employer's expenses and costs of action' had been paid."

We cannot agree with the appellee's contention that the alleged tort-feasors have admitted liability by their agreement with Joseph W. Wright, and that it is entitled to a money decree to the amount paid out by it under the award. *U. S. Fid & Guar. Co. v. New York, N. H. & H. Ry. Co.,* 101

Conn. 200, 125 A. 875.   What we do say is that it is entitled
to receive the amount of money which the railway and ware-
house companies have agreed to pay Wright, and as much
more as it may recover in its suit against them to the extent
of its obligation under the award, together with its "expenses
and costs of action."

For the reasons stated the decree of the chancellor over-
ruling the demurrer will be affirmed.

*Decree affirmed, with costs.*